IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ADRIAN D. MURRAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:08CV280 |
| | ) |
| UNKNOWN NAMED INSURERS | ) |
| OF A. CASH, BARBARA JACKSON, | ) |
| A. CASH, LOUISE CRUZ, and | ) |
| CHARLES WYATT, | ) |
| | ) |
| Defendants. | ) |

ORDER AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

This case has a long procedural history, with over 100 docket entries, although the case has not proceeded beyond the pleading stage. Plaintiff Adrian D. Murray, a prisoner of the State of North Carolina, proceeds *pro se*, and, as the Court remarked in its Order of November 19, 2009, has filed "multitudinous motions that do little or nothing to advance the progress or determination of this action." (Docket No. 111.) In that Order alone, the Court denied more than half a dozen frivolous motions filed by Plaintiff Murray.

The controlling pleading in this case is Plaintiff's Third Amended Complaint. (Docket No. 70.) While that pleading identifies four named Defendants (A. Cash, Barbara Jackson, Louise Cruz, and Charles Wyatt), Plaintiff has since voluntarily dismissed his

claims against Defendants Cruz and Wyatt. *See* Docket Nos. 84 and 89.[1] The Court will briefly outline Plaintiff's claims of the Third Amended Complaint against Defendants Cash and Jackson.

**The Third Amended Complaint – Claims against Defendants Cash and Jackson**

In the Third Amended Complaint, Plaintiff Murray alleges that Defendant A. Cash was the head dietician at Scotland Correctional Institution from June 2006 until February 2008. Plaintiff alleges that Defendant Cash "denied, delayed, and interfered with a dr. prescribed course of treatment, for non-medical reasons." (Docket No. 70 at 2.) Plaintiff asserts that Defendant Cash exhibited a callous indifference to Plaintiff's serious medical need for a special diet. Plaintiff named Barbara Jackson as a Defendant "due to her own deliberate indifference to Plaintiff's serious medical needs and as supervisory personnel of A. Cash." (*Id.* at 3.) According to Plaintiff, Defendant Jackson was contacted by Plaintiff after Plaintiff spoke and wrote to A. Cash, expressing a desire to comply with policy and wear a special wristband. Jackson was "requested to assist Plaintiff in obtaining dietary supplements as determined by Policy 310.2(1) . . . and as prescribed by Plaintiff's physician." (*Id.*)

---

[1] Plaintiff has made motions to reinstate claims as to Defendants Cruz or Wyatt, or some claims as to Barbara Jackson "for limited purposes," but these motions have been denied for good cause recited by the Court. (Docket No. 111.) Plaintiff's pending claims in this action are those stated in the Third Amended Complaint against Defendants A. Cash and Barbara Jackson.

Plaintiff Murray alleges that he has been diagnosed with a chronic and debilitating illness which is treated with highly toxic medications. For proper absorption of the medications, medically necessary snacks (and boost) were prescribed. Plaintiff states that when he first arrived at Scotland Correctional Institution he "refused to wear a quasi-necessary diet wristband." (*Id.* at 5.) As a result, he was denied the dietary supplements. Thereafter, however, Plaintiff alleges that he expressed a desire to comply with prison policy and wear the wristband. His health began to decline and continued to decline to the time of the filing of the complaint in this action. Plaintiff alleges that "[a]fter Plaintiff expressed desire to wear the wrist band and even after Plaintiff began wearing the band [he] still do[es] not receive what policy says [he] should have." (*Id.* at 6-7.) Plaintiff describes at length the physical injury that is being caused by his failure to receive the appropriate snacks. (*Id.* at 8-9.)

In response to the Third Amended Complaint, Defendants Annette Cash and Barbara Jackson have filed a Rule (12)(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted. (Docket No. 92.) Plaintiff Murray has filed a response in opposition. (Docket Nos. 96 and 97.) The motion to dismiss is ready for a ruling.

### The Rule 12(b)(6) Standard

Dismissal is proper under Rule12(b)(6) where a plaintiff fails to plead a short and plain statement of the claim showing the pleader is entitled to relief. *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). For the purposes of Rule 12(b)(6), the Court is

not required to accept as true the legal conclusions set forth in a plaintiff's complaint. *District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085 (4th Cir. 1979). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," as opposed to merely conceivable on some undisclosed set of facts. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). Specifically, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (citations omitted). *See also Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937 (2009). The Court has a duty to liberally construe the allegations of the *pro se* Plaintiff. Nonetheless, the Court is not required "to conjure up questions never squarely presented" and "cannot be expected to construct full blown claims from sentence fragments. . . ." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985.)

**Discussion**

Defendants' motion to dismiss poses three questions for the Court: (1) Whether Plaintiff fails to state a claim against Jackson upon which relief can be granted such that this cause ought to be dismissed as to her; (2) whether Plaintiff's deprivation, if any, occurred as a result of state action; and (3) whether Defendants Jackson and Cash are entitled to the protections of qualified immunity such that they ought not be compelled to litigate this matter and it should be dismissed as against them? The Court will address these questions in turn.

The Court determines that the Third Amended Complaint does not state a cause of action against Defendant Jackson. The Court construes the Third Amended Complaint to raise a single constitutional claim: deliberate indifference to a serious medical need of the Plaintiff. In this case, the alleged serious medical need is Plaintiff's medical need for special dietary snacks. While Plaintiff includes language in his pleadings concerning "conditions of confinement" and "cruel and unusual punishment," it is apparent that the gravamen of the Third Amended Complaint is deliberate indifference to a serious medical need.

The leading case concerning the provision of medical service to prisoners is *Estelle v. Gamble*, 429 U.S. 97 (1976), where the United States Supreme Court held that prison officials could be liable in damages to a prisoner only if they were *deliberately indifferent* to a *serious* medical need of the prisoner. The Court noted, however, that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner," *id.* at 106, and that mere negligence on the part of prison officials, or negligence by a prison physician in diagnosing a condition or treating a prisoner, does not state a claim of medical mistreatment under the Eighth Amendment. *Id.* at 105-06. In order to establish a "serious medical need" a plaintiff must demonstrate that he suffered from an acute physical condition characterized by an urgent need for medical care. *Stiltner v. Rhay*, 371 F.2d 420, 421 n.3 (9th Cir. 1967). The court may rely on medical records concerning treatment and examination of the plaintiff as a basis for determining the existence of a serious medical need. *See West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978). The Supreme Court has

indicated that the type of conduct on the part of prison officials that is proscribed by the Eighth Amendment is "obduracy and wantonness" rather than ordinary lack of due care. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). The United States Court of Appeals for the Fourth Circuit has repeatedly emphasized that mere negligence by a physician or disagreement between a prisoner and a physician concerning treatment does not support a constitutional claim. *See Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977); *Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975).

Plaintiff's *Estelle* claim has two parts. First, Plaintiff alleges that a doctor prescribed special snacks for Plaintiff due to a medical condition, but Plaintiff did not receive them at Scotland Correctional Institution because he refused to wear a special wristband that signified his entitlement to special diet treatment. Second, Plaintiff alleges that even after he notified Defendant Cash that he would wear the special wristband, he was still denied the snacks. (Defendants suggest that at the time and after Plaintiff gave this notice, he no longer had a valid physician's prescription for the dietary snacks.)

It is clear that the first theory of Plaintiff's claim cannot support liability against either Defendant in this action. The requirement that Plaintiff wear a wristband to identify his entitlement to special dietary treatment is a reasonable regulatory requirement, related to legitimate penological objectives, that Plaintiff was obligated to fulfill. He concedes that he refused at first to wear a wristband. He therefore can have no viable *Estelle* claim regarding Defendants' actions regarding his special snacks until *after* he gave notice that he

had changed his mind and would wear the required wristband. Accordingly, Defendants are entitled to dismissal of Plaintiff's complaint insofar as it purports to state a claim as to events before he acquiesced in wearing the wristband. (This ruling also addresses Defendants' second question regarding state action: Defendants argue that any injury to Plaintiff while he was refusing the wear a wristband was caused by Plaintiff's intransigence, not by any state action.)

Under Plaintiff's second theory, that he has an *Estelle* claim regarding the time period after he agreed to wear a wristband, Plaintiff attempts to hold Defendant Jackson liable under a theory of supervisory liability and for Defendant Jackson's own alleged deliberate indifference. It is well settled that general principles of *respondeat superior* do not apply in § 1983 actions, and a plaintiff cannot hold a supervisor liable for the actions of a subordinate merely on the basis of the supervisory relationship. *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977); *see also Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990) (supervisory liability requires showing that supervisory officials failed promptly to provide inmate with needed medical care, deliberately interfered with prison doctors' performance, or tacitly authorized or were indifferent to physicians' constitutional violations). Simply stated, a plaintiff must plead that each government official (here, state actor Jackson), through the official's own individual actions, has violated the Constitution. *See Iqbal*, 129 S. Ct. at 1948.

Plaintiff's pleadings do not show that Defendant Jackson had a duty to act in this case. Defendant A. Cash is sued as the head dietician at Scotland Correctional Institution. Defendant Barbara Jackson is sued as the Regional Dietician for the South Central Area. Plaintiff's central allegation is that after he informed Defendant Cash that he would wear the required wristband, he nonetheless was not provided with the dietary snacks prescribed by a physician. However, Plaintiff does *not* allege that he informed Defendant Jackson that he had changed his position from non-acquiescence with regard to the wristband requirement. He alleges instead that he contacted Defendant Jackson "after Plaintiff spoke to and wrote A. Cash, expressing a desire to comply with policy and wear the diet wristband." (Docket No. 70 at 3.) By his allegations, Plaintiff does not raise an inference that Defendant Jackson was in possession of all of the knowledge necessary to give rise to any duty to act. It is not clear, *see Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) and *Burks v. Raemisch*, 555 F.3d 592, 593 (7th Cir. 2009), that Defendant Jackson would have had a legal duty to act even with proper notice of all salient facts, but it is absolutely clear that she had no duty under the allegations of the Third Amended Complaint. There arises no plausible inference of deliberate indifference, or tacit authorization, by Defendant Jackson regarding any alleged constitutional deprivation suffered by Plaintiff Murray.

As a result of the above analysis, the claim that remains viable in this action is Plaintiff's *Estelle* claim against Defendant Cash, based upon allegations that Defendant Cash refused to provide diet snacks to Plaintiff, called for by a physician's order, after Plaintiff

gave notice to Defendant Cash that he would wear a dietary wristband. Defendant Cash is not entitled to qualified immunity on this claim since the parameters of an *Estelle* claim have long been clearly established, and Plaintiff's allegations squarely raise a claim of deliberate indifference to a serious medical need. Of course, the facts, as shown by all the evidence which may be adduced by the parties, may or may not support Plaintiff Murray's claim, but that is not a matter for Rule 12(b)(6) adjudication.

## Conclusion

For reasons set forth above, **IT IS RECOMMENDED** that the motion to dismiss filed by Defendants (Docket No. 92) be granted in part and denied in part. All claims against Defendant Jackson should be dismissed. Plaintiff's *Estelle* claim against Defendant Cash should be dismissed insofar as it rests upon a claim by Plaintiff that Defendant Cash violated his rights during the time period in which he refused to wear a special wristband. Plaintiff's *Estelle* claim against Defendant Cash based upon a claim that Defendant Cash refused to provide dietary snacks to Plaintiff after Plaintiff notified her he would wear a wristband presents factual issues that cannot be decided under Rule 12 procedures. That sole claim should survive the motion to dismiss.

The parties may have discovery regarding Plaintiff's surviving *Estelle* claim. **IT IS ORDERED** that the parties may have discovery under the federal rules until October 15, 2010. Any discovery requests must be timely served so that responses are due on or before

October 15. Plaintiff's motion for an order regarding Defendants' motion to dismiss (Docket No. 115) is **DISMISSED** as moot.

                                        /s/ P. Trevor Sharp
                                      United States Magistrate Judge

Date: June 22, 2010