IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ADRIAN D. MURRAY,           )
                            )
        Plaintiff,          )
                            )
                            )
                            )
    v.                      )    1:08CV280
                            )
A. CASH,                    )
                            )
        Defendant.          )

### ORDER, MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This case comes before the court on Defendant's motion to dismiss based upon the preclusive effect of a final judgment in a state lawsuit raising the same cause of action. (Docket Entry 168.) Plaintiff has responded to the motion and the matter is ripe for disposition. Also before the court are two motions titled "Motion Requesting the Court to Deny the Defendants Request to Apply Res Judicata and Issue a Date for Trial of these Matters" (Docket Entries 192, 195) and a motion by Plaintiff to file confidential medical information under seal (Docket Entry 185). For the reasons that follow, the court will grant Plaintiff's motion to seal, and recommend that Defendant's motion to dismiss be granted and that Plaintiff's two other motions be denied as moot.

### I. BACKGROUND

Plaintiff, a prisoner of the state of North Carolina proceeding *pro se*, initiated this action pursuant to 42 U.S.C. § 1983 on April 22, 2008. (Docket Entry 2.) The case traveled a tortured procedural path for the next two years with several amendments to the complaint

and dismissals granted as to several of the named defendants.[1] On June 10, 2009, Plaintiff filed a third amended complaint ("TAC"), naming A. Cash, Barbara Jackson, and other North Carolina Department of Correction ("DOC") employees as defendants.[2] (Docket Entry 70.) The gist of Plaintiff's claim is that, after he was transferred to Scotland Correctional Institution ("SCI") in June 2006, Defendant Cash, a DOC dietician, refused to honor his physician's order to provide a therapeutic diet, which augmented his regular diet with three daily snack bags. (TAC at 2, Docket Entry 70.) According to the complaint, Plaintiff wrote to Ms. Jackson, a DOC food and nutrition manager, to complain about Cash's conduct, but Jackson ignored Plaintiff's requests. (*Id.*) Plaintiff requested compensatory and punitive damages, along with injunctive relief. (*Id.* at 10.)

Defendants Jackson and Cash filed their motion to dismiss the TAC on September 17, 2009. (Docket Entry 92.) In support of their motion, Defendants argued that under prison policy, SCI inmates on therapeutic diets were required to wear a special identifying wristband. (*See* SCI Policy, Docket Entry 93-3.) Plaintiff refused to wear his wristband, claiming that it was not penologically necessary. (*See* Am. Compl. at 12, Docket Entry 11.) Plaintiff's refusal to comply with the wristband policy was construed as a withdrawal of his informed consent, resulting in the discontinuation of his therapeutic diet. (*Id.* at 13.) Plaintiff claimed that, after his initial refusal to comply with the wristband policy, he wrote to Defendant Cash and expressed his willingness to comply.

---

[1] For a more lengthy and complete narrative of the procedural background of this case, see the memorandum opinion and order of Magistrate Judge J. Patrick Auld dated May 1, 2012. (Order, Docket Entry 167.)

[2] Plaintiff titled this document "Statement of Complaint," but because it was the third such pleading, the court treats it as the third amended complaint.

2

On June 22, 2010, Magistrate Judge P. Trevor Sharp issued his order and recommendation. (Docket Entry 117.) The Recommendation dismissed Jackson from the suit, and split Plaintiff's claim against Cash into two distinct claims:

> Plaintiff's [deliberate indifference to serious medical need] claim has two parts. First, Plaintiff alleges that a doctor prescribed special snacks for Plaintiff due to a medical condition, but Plaintiff did not receive them at Scotland Correctional Institution because he refused to wear a wristband that signified his entitlement to special diet treatment. Second, Plaintiff alleges that even after he notified Defendant Cash that he would wear the special wristband, he was still denied the snacks.

(Rec. at 6, Docket Entry 117.) Judge Sharp reasoned that Plaintiff had no deliberate indifference claim during the period when he refused to wear the wristband, but he had a deliberate indifference claim "after he gave notice that he had changed his mind and would wear the wristband." (Id. at 6-7.) Judge Sharp also rejected Defendant Cash's claim of qualified immunity, "since the parameters of a [deliberate indifference] claim have long been clearly established, and Plaintiff's allegations squarely raise a claim of deliberate indifference to a serious medical need." (Id. at 9.)

On August 23, 2010, Chief Judge James A. Beaty adopted Judge Sharp's recommendation and dismissed all of Plaintiff's claims except one claim against Defendant A. Cash. (Order, Docket Entry 134.) Judge Beaty's order provided that the sole claim to survive the motion to dismiss was "Plaintiff's *Estelle* claim against Defendant Cash based upon a claim that Defendant Cash refused to provide dietary snacks to Plaintiff after Plaintiff notified her he would wear a wristband [that] presents factual issues that cannot be decided under Rule 12 procedures." (Id. at 2.)

3

On May 29, 2008, while this federal action was pending, Plaintiff filed a claim for damages against the DOC under the North Carolina Tort Claims Act. In this claim before the North Carolina Industrial Commission, Plaintiff alleged that a DOC employee, Defendant Cash, neglected to provide him with his therapeutic diet, thus causing injury to Plaintiff. (*See* Def.'s Br. Supp. Mot. for Stay, Ex. A, Tort Claim, Docket Entry 147-2.) Following several procedural rulings, Plaintiff's tort claim was tried before a Deputy Commissioner of the North Carolina Industrial Commission on January 6, 2011. By order dated March 8, 2011, the Deputy Commissioner denied Plaintiff's tort claim. (*Id.*, Ex. F, Docket Entry 147-7.) Plaintiff appealed that order to the Full Commission.

In a written order dated December 12, 2011, the Full Commission denied Plaintiff's claim, finding "no credible evidence that [DOC], by or through its employees, breached any duty owed to [Plaintiff] or was negligent regarding the providing to him of his prescribed diet." (Def.'s First Status Report, Ex. A, Indus. Comm. Order at 4, Docket Entry 162-1.) By order dated January 10, 2012, Judge Sharp stayed this case pending the resolution of Plaintiff's appeal of the order of the Full Commission. (Order, Docket Entry 153.) On April 10, 2012, the Full Commission dismissed Plaintiff's appeal, thus rendering final the decision of the Full Commission. (Def.'s Br., Ex. I, Docket Entry 169-1.)

On May 22, 2012, Defendant Cash filed the instant motion to dismiss, based on *res judicata* grounds. (Docket Entry 168.)

## II. STANDARD OF REVIEW

Defendants argue that dismissal is appropriate pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of

4

the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (1999). A complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.*; *see also Simmons & United Mortg. & Loan Invest.*, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face."). *Pro se* complaints are to be liberally construed in assessing sufficiency under the Federal Rules of Civil Procedure. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, even under this liberal construction, "generosity is not a fantasy," and the court is not expected to plead a plaintiff's claim for him. *Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 192 (4th Cir 1998).

## III. DISCUSSION

### A. Motion to Dismiss – *Res Judicata*

Defendant contends that the complaint should be dismissed on the basis that Plaintiff's claim is barred by the principles of *res judicata*. Under the doctrine of *res judicata*, or claim preclusion, generally, "a prior judgment between the same parties can preclude subsequent litigation on those matters actually and necessarily resolved in the first adjudication." *In re Varat Enters., Inc.*, 81 F.3d 1310, 1314-15 (4th Cir. 1996). Claim preclusion provides that if the later litigation arises from the same cause of action as the first, then the judgment in the prior action bars litigation "not only of every matter actually

5

adjudicated in the earlier case, but also of every claim that might have been presented." *Id.* at 1315 (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980). The three elements required for *res judicata* to apply, therefore, are "(1) a judgment on the merits in a prior suit resolving (2) claims by the same parties or their privies, and (3) a subsequent suit on the same cause of action." *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1473 (4th Cir. 1996). "[T]herefore . . . claim preclusion requires only a valid and final judgment." *Hearne v. Sherman*, No. 1:95CV00426, 2002 WL 31942142, at *2 (M.D.N.C. Nov. 12, 2002). As the Fourth Circuit has explained in discussing claim preclusion:

> In finding that the second suit involves the same cause of action, the court need not find that the plaintiff in the second suit is proceeding on the same legal theory he or his privies advanced in the first suit. As long as the second suit arises out of the same transaction or series of transactions as the claim resolved by the prior judgment, the first suit will have preclusive effect.

*Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 210 (4th Cir. 2009) (internal quotation and citation omitted).

Here, Plaintiff's claim of negligence against the DOC was based on the same facts alleged to support his present civil rights claim that the termination of his therapeutic diet endangered his health. *Murray v. Department of Correction*, No. TA20700. Plaintiff initiated the state action by filing an affidavit with the North Carolina Industrial Commission pursuant to the provisions of the North Carolina Tort Claims Act, N.C. Gen. Stat. § 143-291, *et. seq.* The final decision of the Industrial Commission found that there was no credible evidence that the DOC or its employees (including Defendant Cash) had committed negligence with regard to Plaintiff's diet.

6

Under 28 U.S.C. § 1738, federal courts are required to "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the state from which the judgments emerged." *Kremer v. Chemical Const. Corp.*, 456 U.S. 461 (1982). The Supreme Court has held that actions brought under 42 U.S.C. § 1983 are not immune from the issues of claim preclusion and issue preclusion. *Preiser v. Rodriguez*, 411 U.S. 475 (1973); *Rimmer v. Fayetteville Police Dep't.*, 567 F.2d 273, 276 (4th Cir. 1977). The rules of claim and issue preclusion based on state court judgments, moreover, have been held applicable to subsequent federal actions brought under 42 U.S.C. § 1983. *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75 (1984).

The North Carolina Tort Claims Act sets forth the procedures to bring a negligence action against the State. Under that Act, the North Carolina Industrial Commission is "a court for the purpose of hearing and passing upon tort claims against the State Board of Education, the Board of Transportation, and all other departments, institutions and agencies of the State." Adversary hearings are held before a Deputy Commissioner. Decisions of the Deputy Commissioner are appealable to the full Industrial Commission pursuant to N.C. Gen. Stat. § 143-292 and, thereafter, to the North Carolina Court of Appeals as set forth in N.C. Gen. Stat. § 143-293.

At the hearing before the Deputy Commissioner, Plaintiff represented himself. The record indicates that the issue of negligence on the part of the DOC and its employees, including Defendant Cash, was fully and fairly litigated. The Deputy Commissioner's finding that Plaintiff "produced no credible evidence that [DOC] by or through its employees,

7

breached any duty owed to him or was negligent regarding the providing to him of his prescribed special diet" therefore must be applied to the case at hand.

A prisoner may prove a § 1983 claim for cruel and unusual punishment under the Eighth Amendment if he demonstrates that prison officials have been deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97 (1976). Thus, an essential element of Plaintiff's § 1983 claim is that he prove that Defendant Cash was "deliberately indifferent" to his serious medical need. Plaintiff's negligence claim, litigated in the state proceeding, required proof of a far less rigorous state of mind standard than the instant deliberate indifference claim requires. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991) (holding conduct violative of the Eighth Amendment "must involve more than ordinary lack of due care for the prisoner's interests or safety . . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the [Eighth Amendment].")

In his response to the motion to dismiss, Plaintiff claims that this action and the tort claim before the Industrial Commission do not share the same operative facts. (Pl.'s Resp. at 1-4, Docket Entry 172.) The court notes that this argument is a bit disingenuous on the part of Plaintiff, who in a prior motion filed in this court stated that "[t]he misconduct complained of in the state action is the identical subject matter of the case subjudice [sic], deprivation of prescribed diet by Annette Cash." (Pl.'s Mot. for Use of Dep. at 2, Docket Entry 145.) Moreover, Plaintiff acknowledges that both the present claim and the tort claim litigated before the Industrial Commission involve the same parties or their privies. In his motion for use of depositions, Plaintiff stated "[e]ven though the defendant in the state tort

8

claim is the North Carolina Department of Correction, the action was brought due to the misconduct of the employee of the Dept. of Corr. Annette Cash, who is the Defendant in the case sub judice." (*Id.* at 2.) Plaintiff later stated "[t]hough Defendant Case was not the primary Defendant in the state action, she was an officer and/or agent for the state action Defendant and she and/or her interests were represented by the N.C. Department of Justice at the taking of the depositions. . . Since the subject matter is identical in the two claims the information available in these documents is admissible." (*Id.* at 3.)

Plaintiff claims that his case before the Industrial Commission "turned upon those already dismissed claims and facts concerning refusal to wear a wristband," and that the present action deals with the period after Plaintiff began to wear the wristband. However, the record of the Industrial Commission hearing shows that the Deputy Commissioner found that Plaintiff's own negligence, *i.e.* his refusal to wear the wristband, continued past the date Plaintiff told Defendant Cash he would begin to wear the wristband, and that Plaintiff's behavior contributed to his injury such that the DOC was not liable. (Def.'s Reply, Ex. F, Decision and Order, Docket Entry 147-7.)

Plaintiff chose to first litigate his negligence claim, with its far less rigorous state of mind standard than the instant deliberate indifference claim requires. Plaintiff cannot be allowed a second opportunity to prove his claim. The final judgment on the merits in Plaintiff's state claim arising out of the termination of his therapeutic diet while in the custody of DOC is entitled to preclusive effect. Plaintiff, therefore, cannot maintain a claim under § 1983 alleging that Defendant Cash violated his constitutional rights based on the same facts presented in support of his claim brought under the North Carolina Tort Claims

9

Act. For these reasons, Plaintiff's Eighth Amendment claim of cruel and unusual punishment on the part of Defendant Cash in intentionally ignoring Plaintiff's serious medical needs should be dismissed.

**B. Motion to Seal**

On June 25, 2012, Plaintiff filed a motion to file confidential medical information under seal and/or have such information redacted. (Docket Entry 185.) Defendant has filed no objection to this motion.

It is unclear to the court exactly which documents Plaintiff seeks to file under seal. In the motion itself, Plaintiff refers to "portions of the Plaintiff's medical files, listed as Exhibit Four in the attached motion for hearing." (*Id.* at 1.) However, at the same time he filed the motion, Plaintiff filed five exhibits (Docket Entries 186-190), one of which is listed on the docket as being under seal. (Docket Entry 189.) This exhibit contains treatment notes from Plaintiff's medical providers. On May 15, 2013, Plaintiff filed a motion titled "Motion Requesting the Court to: Deny the Defendants Request to Apply Res Judicata and Issue a Trial Date of These Matters." (Docket Entry 192.) At the same time, Plaintiff filed sealed attachments to this motion. (Docket Entry 193.) One of these seven exhibits is the same exhibit filed previously as Docket Entry 189 (labeled by Plaintiff as Exhibit 6). Additionally, pages 12-13 of Docket Entry 193, labeled by Plaintiff as Exhibit 4, contain medical information concerning Plaintiff's condition and treatment.[3]

---

[3] The other information contained in Docket Entry 193, such as descriptions of and rules for different therapeutic diets in prison, the wristband policy, and printed caselaw, simply do not rise to the level required for maintaining the exhibit under seal. The orders for Plaintiff's therapeutic diet, likewise need not be sealed, inasmuch as it is admitted and common knowledge through this lawsuit that Plaintiff was receiving a special diet in prison.

10

Because these exhibits were submitted in connection with a pending matter, they constitute a "judicial record[] subject to the First Amendment right of access." *Bell v. Shinseki*, No. 1:12CV57, 2013 WL 3157569, at *9 (M.D.N.C. June 20, 2013). Thus, the granting of such a motion is proper "only on the basis of a compelling governmental interest and only if the denial is narrowly tailored to serve that interest." *Id.* (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988)). Thus, the court must

> [w]eigh the appropriate competing interests under the following procedure: it must give the public notice of the request to seal and a reasonable opportunity to challenge the request; it must consider less drastic alternatives to sealing; and if it decides to seal it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing.

*Va. Dept. of State Police v. Wash. Post*, 386 F.3d 567, 576 (4th Cir. 2004). The pending motion to seal was docketed on July 25, 2012. The public thus has had notice and opportunity to challenge the request. The court has reviewed the exhibits in question which contain information related to Plaintiff's medical tests and conditions. There is minimal public interest in the information, and allowing public access "would have little value in furthering the public oversight of the judicial process." *Bell*, 2013 WL 3157569 at *9. Plaintiff's confidentiality concerns could not be protected by a less drastic alternative. Therefore, the court will grant Plaintiff's motion and the clerk is directed to maintain Docket Entry 189 and pages 12-13 of Docket Entry 193 under seal.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motion to file exhibit under seal (Docket Entry 185) is **GRANTED** as to Docket Entry 189 and pages 12-13 of Docket Entry 193. Further, **IT IS RECOMMENDED** that the court **GRANT** Defendant's motion to dismiss

11

Case 1:08-cv-00280-JAB-JLW Document 198 Filed 07/11/13 Page 11 of 12

on the basis of *res judicata*. (Docket Entry 12.) **IT IS FURTHER RECOMMENDED** that Plaintiff's motion to deny Defendants request to apply *res judicata* (Docket Entry 192) be **DENIED** and that Plaintiff's motion for a hearing be **DENIED** as moot.

Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
July 11, 2013